The next case on for argument is United States v. Lobo. Good morning. Good morning. May it please the court, my name is Manuel Retoretta. I represent the appellant in this matter, Mr. Fabio Lobo. I'd like to thank the court for allowing us to discuss some of the issues that appeared in his sentencing. I have asked the court for two minutes of rebuttal time, if that is acceptable to the court. It's acceptable, thank you. You don't have to thank us, this is your court. Thank you, Your Honor. I'd like to focus on, we've raised some issues, but I'd like to focus on the direct involvement in the importation of controlled substances into the United States. Section 2D1.1B15C, right? That is it, Your Honor. And in our research and work on this, we believe that this is a case of first impression for the court. There are other circuits that have addressed this enhancement, this two-level enhancement. But for the Second Circuit, we did not find any. And my colleague from the government had not found other authority also from the court. So we think it's an opportunity for the court to provide guidance to practitioners who handle this a lot. And more and more recently as criminal case law is involving people being in other countries and importing substances to the United States. So the language of the applicable guidelines along with the commentary, but let's look at the language first, clearly doesn't require that the defendant who's subject to the enhancement be in the United States. Well, the authority, the case law goes along that line. But would you answer my question? The language clearly doesn't require, and you may have other arguments, but there's no explicit requirement that the defendant be in the United States. Absolutely. The only language we're dealing with is the direct involvement in the importation. Comparing, we've highlighted a comparison. And just, pardon me for the interruption, but the cases on which you rely, the out-of-circuit cases, are cases, as I understand it, where the defendant was in the United States? Indeed. There's a common thread that runs through those. It's physical presence in the United States. Which, just before we get off that point, which you've agreed is not required under the guideline. It's not specifically stated. It is merely directly involved in the importation. There is not the language of directly involved and being in the United States. No, that's not there. However, direct involvement does change within the sentencing guidelines because there's another section that involves amphetamines and methamphetamines, 2D1.15, which merely speaks to involvement. We've highlighted that difference. Which guideline are we talking about? That's 2D1.15. Help me understand what your theory of direct involvement is. What do you think it means? What do you urge us to conclude that it means? It means something that touches the United States, something that somehow brings it into the United States world. The physical presence is one aspect. The affirmative steps related to something crossing the border. I give the drugs to a mule and say, take it through the tunnel, and you'll be met a quarter of a mile outside of that by a guy in a truck and give it to him. Is that direct involvement? That goes in line with one of the circuit cases where it talks about the fact that the person was induced to cross the border. Could you answer, Judge? Is that direct involvement? Yes. According to . . . I believe that case is the Valdez case. But let me take you to the other side of the transportation ring, which is right now there is a person in Colombia, Peru, South America, taking cocaine leaves and processing them. And the person is going to take that and put it into a bundle, and he's going to give it to somebody on a truck, and that truck is going to drive from the middle of Colombia to maybe the coast of Colombia. Explain to me, why is your . . . given what the government has set out in the red brief, your theory as to why your client wasn't directly involved is what? He was that person driving a truck in Colombia. He was that person taking a boat from the coast of Colombia to maybe Panama. And he was that person, specifically in our case, in Honduras, driving from one point in Honduras to another point in Honduras. So if direct involvement and 2D1.1B15C is to apply, then we have to carry it all the way down the chain,  and that does not seem to be the way that this enhancement has been interpreted. Well, I mean, your client has to have involved others in the project of getting these drugs to the United States, if nothing because of the just enormous quantities of drugs he was moving. I mean, nobody could move these quantities by himself. Need other people. Well, he was used by somebody that was that enormous traffic. Was he the only way of viewing the evidence, or was he not an arranger? He was a person who had the ability in Honduras to be able to get through a roadblock, to be able to show his face as the son of the president and have those people at the roadblock say, come on through. Why is that not direct involvement? Because his activity never touched U.S. soil. His activity never was connected to crossing U.S. soil. Well, if the drugs got confiscated because he drove up, you know, they were driven up one of the roads they weren't supposed to be going up, they never would have reached the States. We don't know that. The facts of the case don't tell us where exactly these drugs ended up, how they were transported across, whether if they reached the Mexico-Guatemalan border after passing through Guatemala from Honduras, whether they were sold in Mexico City, put on a boat, and sent to Europe. The one piece of testimony that we have from the cooperator that the government presented was that he pretty much thought it was going to be going to the United States. This is Divas. Yes, that's right, Mr. Rivera-Maradiaga. So it would be fine if we're talking involvement. Then we can begin to stretch this out. That would be consistent with the cases. But for some reason, the Sentencing Commission has decided direct involvement is the standard. And direct involvement, given the other circuits, how it's been interpreted, seems to be that there has to be one level above. And unfortunately, for Mr. Lobo's case in the government's position, he does not seem to carry through with that. He's just in Honduras from one point in Honduras to another point in Honduras. I see my red light is on. I appreciate it. We reserve two minutes for rebuttal. Thank you. Thank you. We'll hear from Mr. Bove. May it please the Court, good morning. My name is Emil Bove. I'm an AUSA in the Southern District of New York. I represent the government on appeal, and I represented the government in the district court. Judge Schofield conducted a very thorough sentencing proceeding in this case, including detailed fact findings that support all of her conclusions. We've focused so far this morning on the 2D1.1B15 enhancement, and I'll follow suit. As a factual matter, Judge Schofield found, after this hearing, that the defendant was directly involved in the importation of cocaine. Is that a factual or a legal or some mixed question of fact and law? Isn't the question before us, what counts as direct involvement? I think there is a legal question before the Court. Yes, Judge. I don't think that the full scope of that term needs to be resolved, but I do want to address from my perspective what that term means in the guideline. The Sentencing Commission told us in Application Note 20B, what it means is a defendant who himself imports cocaine or someone who in effect causes. The Commission used the terms aid, abet, counsel, and command. Induce, procure. I submit that what's going on here is that the Commission is indicating what types of relevant conduct under 1B1.3 will be sufficient for the application of this enhancement, because the default rule under the relevant conduct guideline is that there are a variety of things that will count to apply the enhancement, including acts by others that were reasonably foreseeable to the defendant and in furtherance of the conspiracy, things that were the object of the harm of the conspiracy, so even an inchoate conspiracy, as well as things that were done by others that were part of the same course of conduct. Those are all provisions in 1B1.3 that the Commission has made clear in this application note to the enhancement we're talking about don't count. What the Commission says in this application note is that direct involvement means the relevant conduct covered by 1B1.3A1A. Does that also mean that there's got to be evidence or a finding by preponderance that there was evidence that the defendant understood that the controlled substance, whatever it was, would be imported into the United States? I don't think so, Judge. That's not what the guideline says. However, in this case— If I am a very low-level person helping out in the coca fields in Columbia and I aid because I am doing something in those fields to produce cocaine, but I have no idea where it's going, and I get caught, and I'm brought up and convicted in a United States district court, I'm subjected to this two-point enhancement. No, Judge. Explain to me what your position is. In that regard, the first, I think, most important answer is that the enhancement has two prongs. The first requirement is that there be an aggravating role adjustment, so somebody in the coca fields playing that type of cultivation role, I think, wouldn't get that enhancement, and so we wouldn't be talking about B-15. There's an additional— That first prong really limits the category of people who are exposed. Yes, Judge, and when this enhancement was promulgated, it was done pursuant to the Fair Sentencing Act in 2010, and Congress said that for people where an aggravating role adjustment is appropriate, these other features in the enhancement are, quote, direct involvement in importation, according to Congress, was a super aggravating factor for people who play management roles in this type of conduct, and that's what the enhancement requires. But I think there's another point I'd like to make about the question of somebody— let's say it's somebody managing a coca field. The process of importation, I submit for purposes of this case, begins after the cocaine is produced and is sent north from South America, and so I think there's almost two legal questions here with respect to enhancement. The first question is what does direct involvement mean, and so there my answer is it means, pursuant to the application note, only the relevant conduct covered by 1B1.3A1A. The second question that's sort of floating around is what does importation mean, and with respect to that question, I think importation starts after the cocaine is distributed and sent north towards the United States, and Suarez is a summary order in this circuit that addressed the question of— or discussed the question of importation. In that case, the defendant was managing cocaine shipments that were leaving on planes towards the United States. Planes don't leave from Colombia and Venezuela on clandestine airstrips and fly into airports in the United States. They stop off in Honduras or in Central America, and the drugs are then transported over land to be imported into the United States. In Suarez, which I submit is persuasive, the court looked at the term importation and said that act of dispatching the plane from Colombia north counts as importation, and that makes sense, and it makes sense for reasons that I think are similar to support the concession we have that importation also includes upstream distribution conduct in places like Chicago and Pennsylvania, and that is some of the reasoning in the out-of-circuit cases cited by Lobo. If importation continues for that upstream distribution conduct thousands of miles north of the U.S. border, there's not a logical way to explain why it doesn't also include people working thousands of miles south of the border to send the cocaine here when their objective is to import the cocaine, and here we know that was Lobo's objective because he pleaded guilty to participating in a conspiracy with that objective. So I think for all those reasons, that is what direct involvement means and that is what importation means for purposes of this appeal. I don't think that the court needs to reach the outer bounds, and I think that's what you see in the authority that both parties have cited, is no court has felt the need to address it because on the facts of each case, it's clear that this fits within the definition, and I submit that's the situation we're in here with respect to . . . But you're also suggesting that with respect to the importation part, effectively the guilty plea has taken care of that for us. I am, Judge. Okay. If there are no further questions, I'll rest on my brief for the remainder of the arguments. Thank you. Thank you, Mr. Butler. Your Honor, if I can take you back to Columbia. The question that was being asked about whether that person sitting in the coca field would be responsible is downplayed by government counsel because there have been cases, numerous cases, where there have been individuals in the coca fields who are supervising five or more individuals and they have received aggravating role enhancements. So that person would immediately qualify for this direct importation enhancement. I think opposing counsel, government counsel, was drawing the distinction not between the people who were organizing and coordinating the development and production of the product in the field, but the example you gave earlier, which was the poor fellow who's out there picking the leaves and carrying them over to be processed. As an example, the Southern District has prosecuted what was the Colombian guerrilla movement, the FARC. That case dealt with not what was happening in Mexico, Central America, but dealt with the jungles of Colombia where they were processing, collecting coca leaves, processing, packaging, making crystal cocaine and importing it up and aggravating role. You've got to admit the facts of this case are significantly different from . . . Indeed. . . . this hypothetical that we're kicking around, or real case that we're kicking around, right? I think what's interesting is, I think Mr. Bova is right. I think that there is a scale here. We do have to try and figure out where this direct importation stops. Our position is, we have the cases which show it's Chicago, it's Pennsylvania, it's the other cities that were listed, Miami, Haiti. Those are there. That's where circuits have said, hey, that's where direct importation applies. Some of the district court cases are down that same line, moving with the concept of physical presence, moving across the border. This court has the ability to say, look, we're going to go down into Honduras and because of the factors, say he was directly, or, as we would argue, the facts do not support that he was directly involved. Again, if this were involved . . . He admitted that he physically escorted cocaine. Indeed. And that cocaine, and the guilty plea admits that that's a form of importation. So importation is off the table. Is that more or less correct, given the guilty plea? Yeah. So we're really just talking about whether that's directly. Whether he is directly involved in that importation. Yes, because the general chart, the general crime is possessions tend to distribute or distribution with the intent to import. He pled guilty to that. So it's that direct component. It's the direct . . . Even the district court judge said, look, I'm going to give you this, but it's going to be . . . I'm going to have to resort to aiding and abetting, which we think was there also. That's in the commentary. Indeed. Indeed. But I think . . . Was it enough for Judge Schofield to have said, I find that he aided and abetted the importation? We would argue no. We would argue no. The folks don't . . . That would directly contradict the language of the commentary. Well, but the commentary, the way the circuit courts have taken this, it moves it into that . . . You can argue the aiding and abetting, but her interpretation and then application, we would say, is incorrect. If she's resorting to aiding and abetting, what he did did not get to that point, did not qualify for the aiding and abetting for that commentary. Got it. Thank you. Thank you. I appreciate it. Thank you both. Good day. Thank you, gentlemen.